[Civ. No. 23783.   First Dist., Div. Three.   Apr. 24, 1968.]

E. A. ROBEY AND COMPANY, INC., Plaintiff and Appellant, v. CITY TITLE INSURANCE COMPANY, INC., Defendant and Appellant; LAKEPORT TITLE GUARANTY CO. et al., Defendants and Respondents.

Phil N. Crawford for Plaintiff and Appellant.

Passalacqua & Mazzoni and Frank J. Passalacqua for Defendant and Appellant.

Crump, Bruchler & Crump and Frederic S. Crump for Defendants and Respondents.

SALSMAN, J.—The plaintiff, E. A. Robey and Company, Inc. (hereafter referred to as Robey) brought this action against the defendants City Title Insurance Company, Inc. and Lakeport Title Guaranty Company (hereafter referred to as City and Lakeport, respectively) alleging breach of a policy of title insurance issued by the defendants. In a second cause of action plaintiff demanded damages against the defendants for alleged negligence in the examination and reporting concerning the title to real property purchased by the plaintiff after the defendants had reported that title was vested in the seller. The plaintiff's complaint also contained a third cause of action against Luella N. Brubaker, the seller, formerly known as Luella N. Miller (hereafter called Brubaker), alleging mutual mistake in the sale of the real property in question. The alleged mutual mistake consisted in the belief by both seller and buyer that the seller owned the fee title to the real property, subject to uses in the nature of easements, whereas, in fact, the seller had no title at all. The plaintiff demanded repayment of all sums for which it had received no consideration, together with certain expenses paid by it in defending title.

The trial judge directed the jury to return a verdict in favor of the plaintiff against City on the contract cause of action, and left only the issue of damages to the jury. The trial court also ordered a nonsuit in favor of Lakeport, on the ground that Lakeport merely acted as agent for City, and that its status as an agent was fully disclosed. The court also granted a nonsuit in favor of both City and Lakeport on plaintiff's negligence cause of action. Finally, the court directed a verdict in favor of the defendant Brubaker, on the ground that City had accepted all liability and that both buyer and seller were to look only to City for any loss resulting from failure of title.

The jury considered the evidence on the issue of damages and awarded Robey $13,400 against City. City appeals from the judgment. Robey appeals from the judgment and attacks the trial court's order directing a verdict in favor of Brubaker. Robey also asserts error in the trial court's failure to instruct the jury on the subject of interest claimed by it on money paid out in defense of the title to the property and on the portion of the purchase money for which it received no

consideration. Finally, Robey urges it was error to grant a nonsuit in favor of City and Lakeport on the cause of action for negligence. This final assignment of error by Robey is urged only in the event of reversal of the trial court's directed verdict in favor of Robey and against City.

There is no substantial conflict in the evidence. The record shows that some time before 1959 Robey purchased from Brubaker resort property located on Clear Lake in Lake County, California. Robey wished to purchase other property adjacent to the resort property. This property also was owned by Brubaker. In September 1959 Robey and Brubaker negotiated concerning this property. Generally described, the whole parcel may be said to be triangular in outline, its base extending along a street known as Lakeshore Drive, its apex reaching to the low water mark of Clear Lake. The property is roughly divided into two parts—a northerly and a southerly portion. There is no issue concerning title to the northerly portion. The southerly 342 feet of the property, measured along its base on Lakeshore Drive, is the area in dispute here. The easterly boundary of the property follows the irregular line of the low water mark of the lake. The disputed area is variously described in the record as ''the beach property,'' ''the restricted beach'' or ''the lakeside property.'' Title to the property, and the rights of the public and others to its use, was before the Court of Appeal in *Morse* v. *Miller*, 128 Cal.App.2d 237 [275 P.2d 545].

During negotiations between Robey and Brubaker the question of the right of the public and the right of others to use the property was discussed. Robey obtained and read a copy of the appellate court's decision in *Morse* v. *Miller, supra.* He also consulted Donald Morger, an officer and agent of Lakeport for advice. Mr. Morger visited the property and thereafter suggested that the parties petition the court to ''. . . have the court determine what exact extent . . . an owner . . . could use the land for.'' Brubaker, in a letter to Robey, expressed doubt this could be done, saying further: ''The public has an easement to pass over the beach to the water and to the use of the beach for sunbathing.'' She also fixed the price of $8,000 for the ''restricted'' area. Robey replied that the price for this part of the property was fair. These negotiations were not immediately productive. but about six months later the parties agreed upon terms closed their transaction through Lakeport, and City issued its policy of title insurance in favor of both Robey and Brubaker. The policy recited that, as of the closing date, title to the property

described (which included the "restricted beach") was vested in Luella N. Brubaker. Schedule "B" of the policy listed various matters not covered by the insuring agreement. Among the matters not covered was: "Rights of the public or the right of the owners of lots in the 'Austin Tract', *to use the southerly 342 feet of the herein described property as a beach and athletic field,* as set forth in a judgment entered July 3, 1952 in the Superior Court of the State of California in and for the County of Lake (case No. 6025) entitled, Paul E. Morse, plaintiff, v. Jesse C. Miller, et al, defendants. . . ." (Italics ours.) At or about the time the sale was closed, Robey discussed the question of title to the southerly portion of the property with Mr. Morger of Lakeport, with particular reference to the effect of the decision in Morse v. Miller, *supra.* Mr. Morger stated that ". . . there was an easement only for the public."

Immediately after completion of the sale, Robey commenced construction of a beach house on the southerly portion of the property. Thereupon Paul E. Morse, who was the plaintiff in Morse v. Miller, *supra,* sued to enjoin Robey's construction, and questioned Robey's title to the southerly 342 feet of the property it had bought from Brubaker. This litigation resulted in a decision by the court which, in effect, held that Robey had no title whatever to the property by reason of prior dedication for public use. This judgment was affirmed by the appellate court in *Morse* v. *E. A. Robey & Co.,* 214 Cal.App.2d 464 [29 Cal.Rptr. 734]. Robey spent $3,373.39 in its unsuccessful defense of title.

City contends it was error for the trial court to direct a verdict in behalf of Robey because there was a conflict in the evidence. As we understand this contention it is that appellant City intended to except from the coverage of its policy any loss of title resulting from the decision in Morse v. Miller, *supra,* whereas the plaintiff Robey understood the policy to except only public use of the property.

We think that the trial court was entirely correct in directing a verdict in favor of Robey and against City. There was no substantial conflict in the evidence. Where such is the case the court may direct a verdict. (See *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768] ; 2 Witkin, Cal. Procedure (1954) pp. 1857-1858, and cases cited.) As we have seen, City's policy first declared that title to the property was vested in Luella N. Brubaker. This declaration covered the entire property described by metes and bounds in the policy

itself. Schedule "B" referred to the southerly 342 feet of the property but excepted only the right of the public and others "to *use* the southerly 342 feet" as a beach and athletic field, as described in the judgment in the Morse-Miller litigation. (Italics ours.) There is nothing in this exception to suggest a total absence of title in Brubaker. Only a burden of use is stated in the policy. It is apparent that City failed to read with care the appellate decision in Morse v. Miller, *supra.* That decision makes plain that the property here in question had been dedicated to the public for use as a beach and athletic field. In that case, the court cited *Union Transp. Co.* v. *Sacramento County,* 42 Cal.2d 235 [267 P.2d 10] in support of its decison, where the Supreme Court said that a dedication partakes both of the nature of a gift and a grant, and is governed by the same principles. (See also *County of Inyo* v. *Given,* 183 Cal. 415 [191 P. 688].) ▮ In its proper sense, the term "dedication" denotes a gift to the public. When the dedication is complete it operates in the same fashion as a grant and passes the fee title from the former owner to the public. This is what the court was saying in Morse v. Miller, *supra,* in referring to the many cases that have established this rule. (*Washington etc. Co.* v. *City of Los Angeles,* 38 Cal. App.2d 135 [100 P.2d 828] ; *Taylor* v. *Continental Southern Corp.,* 131 Cal.App.2d 267 [280 P.2d 514] ; *Archer* v. *Salinas City,* 93 Cal. 43 [28 P. 839, 16 L.R.A. 145] ; *Slavich* v. *Hamilton,* 201 Cal. 299, 306 [257 P. 60] ; see also Cal. Words, Phrases & Maxims, "Dedication," p. 456, and cases cited.)

▮ Schedule "B" of City's policy excepted from coverage the "right of the public to use" the southerly portion of the property as a beach and athletic field. We think it apparent, however, that only rights in the nature of an easement were excepted. There is no suggestion from the language used that City intended to give Robey no insurance at all on this portion of the property, which is the sense of City's contention here. Robey had a right to expect something for the premiums paid for the insurance. (*Lagomarsino* v. *San Jose etc. Title Ins. Co.,* 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80].) Moreover, if the language used in the exception be deemed ambiguous, it must be construed against City, since City prepared the exception. It cannot rely upon an ambiguity in its policy which, if construed as it contends, would deprive the beneficiary of the benefits of the policy. (See *Narver* v. *California State Life Ins. Co.,* 211 Cal. 176 [294 P. 393, 71 A.L.R. 1374].)

■ Robey contends it was error for the trial court to direct a verdict in favor of Brubaker. We think this point well taken. The evidence is clear that Robey contracted with Brubaker with knowledge that the beach area of the property was subject to some use by the public and by other owners of property in the Austin Tract, of which it was a part. There is, however, no evidence that either buyer or seller ever supposed that the seller had no title whatever. On the contrary, each supposed the seller had some title because the seller had been paying taxes on the parcel although aware that the public and others were entitled to make some use of it. But, as both buyer and seller learned when the issue was decided by the Court of Appeal in *Morse* v. *A. E. Robey & Co., supra,* 214 Cal.App.2d 464, the seller had no title, and had had none since dedication of the property to the public by its former owners.

■ It is settled that a person who has paid money to another for full performance of a contract voidable for mistake, and who has received only part of the agreed exchange, is entitled to keep what he has received, and have restitution for so much of his payment as has not been compensated for by the other's part performance. (*Levy* v. *Wolff,* 46 Cal.2d 367, 368 [294 P.2d 945], and cases cited; see also Rest., Restitution, § 25.) This rule is directly applicable here. Robey received nothing for whatever was paid for the southerly 342 feet of the property supposedly owned by Brubaker. Thus Robey was entitled to recover that portion of the purchase price attributable to the property for which it received no title.

■ As previously noted, the court directed a verdict in favor of Brubaker and against Robey on the ground that the sale was a three-party transaction in which some infirmity in the title to the southerly portion of the property was known to all, and that City, upon issuance of its policy, accepted the entire risk. Both seller and buyer were named as insureds under the policy. But to support the directed verdict in favor of Brubaker we must accept the policy of title insurance as substantial evidence that buyer and seller had agreed to look only to City in the event of some title defect. We do not think the mere designation of both buyer and seller in the policy may be given that effect. We must look at the evidence from Robey's point of view, since the verdict was directed against it, and consider the legitimate inferences that may be drawn from all of the evidence presented in its behalf. From the evidence we have described we think it reasonable to suppose

that Robey intended to receive something of value from Brubaker and that Brubaker honestly believed she had something to sell. We see no evidence that both agreed to rely exclusively upon City despite the fact that both are named as insureds in the policy. Robey was entitled to a judgment against City, as the trial court properly directed, but on the evidence, the jury could also have found that Robey was entitled to judgment against Brubaker. The fact that Brubaker may have a right of indemnity against City, or some right based wholly upon City's policy, does not diminish her liability to Robey. Accordingly, that portion of the judgment which rests upon the directed verdict in favor of Brubaker and against Robey must be reversed.

■ Robey argues the jury should have been instructed that it was entitled to interest on the sum of $3,373.39 court costs paid out by it in defending title to the beach property. We agree.

Civil Code, section 3287 provides for the allowance of interest when damages are certain or capable of being made certain by calculation, and where the right of recovery is vested on a particular day. (See *Overholtzer* v. *Northern Counties Title Ins. Co.*, 116 Cal.App.2d 113, 127 [253 P.2d 116].) The evidence is clear that Robey paid out $3,373.39 in court costs and expenses in defending title. These allowable costs consisted of many items, each in a different amount and paid at various times. As to each, however, the amount being certain, Robey was entitled to have interest calculated from the date of payment. (Civ. Code, § 3287.)

■ Robey also contends it is entitled to interest on that portion of the purchase money paid for the southerly 342 feet of the property lost by failure of title. But damages here were not certain, and could not be made certain until such time as the jury evaluated all of the expert testimony and fixed the value of the disputed property by its verdict. Thus, interest here must run from the date of the judgment.

1. The judgment in favor of E. A. Robey and Company, Inc. against City Title Insurance Company, Inc. is reversed with directions solely for the purpose of permitting the trial court to correct the judgment by adding interest on the sum of $3,373.39 at the legal rate, computed from the date of the various payments making up the principal sum, in accordance with the undisputed evidence;

2. The judgment of dismissal in favor of Luella N. Brubaker and against E. A. Robey and Company, Inc. is reversed;

3. The judgment of nonsuit against Lakeport Title Guaranty Co. is affirmed.

4. Respondent E. A. Robey and Company, Inc. shall recover its costs against appellant City Title Insurance Company, Inc.

Draper, P. J., and Taylor, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.